**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

ERIC LAMONT COLEMAN,      :

    Petitioner,      :

v.      :    CIVIL ACTION 02-00726-WS-B

JAMES DELOACH,      :

    Respondent.      :

## REPORT AND RECOMMENDATION

Eric Lamont Coleman, a state prisoner currently in the custody of Respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner challenges the validity of his conviction in March 1997, by a jury in the Circuit Court of Mobile County, Alabama.  Petitioner was convicted of two counts of murder and sentenced to two life terms (Exh. A., pgs. 6, 14, 18, 20).

This matter is presently before the Court on Petitioner's petitions and briefs, Respondent's answer, and court records and briefs on appeal.  The undersigned Magistrate Judge has carefully reviewed the record and exhibits and finds that there are sufficient facts and information upon which the issues under consideration may be properly resolved.  Therefore, no evidentiary hearing is required upon the issues. Kelley v. Secretary for Dept.

1

<u>Of Corrections</u>, 377 F.3d 1317 (11th Cir. 2004). Upon careful consideration, it is recommended that Petitioner's habeas petition be denied, that this action be dismissed, and that judgment be entered in favor of Respondent James Deloach and against Petitioner Eric Lamont Coleman on all claims.

## FINDINGS OF FACT

Viewing the evidence in the light most favorable to the prosecution, *see* <u>Jackson v. Virginia</u>, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-91, 61 L.Ed. 2d 560 (1979), the following statement of facts is offered[1].

> On October 13, 1994, the appellant and Demetrius McGuire were robbed during a botched drug transaction. The next day, believing that the robbery was set up by a man named Kasung, the appellant and McGuire made plans 'to get Kasung.' (R. 119). They and some other men rode around the neighborhood until they spotted Kasung's car. The appellant jumped out of the car and began shooting. McGuire, Labron Jones, and Ronnie Rudolph also fired at the car. Two men were killed.

> The appellant's case was initially tried in June 1996. His trial was consolidated with his co-defendants, Jones and Rudolph. On three separate occasions, McGuire stated that there were four men in the car. In his statement, grand jury testimony, and trial testimony, he identified the appellant, Jones, Rudolph, and himself as occupants of the car. However, during a recess at the first trial, McGuire was overheard in the hallway outside of the courtroom threatening to testify that 'Burger' McGrew, a witness in the trial, was in the car as well.

---

[1]This statement of facts is taken from the Memorandum Opinion issued by the Alabama Court of Criminal Appeals on May 8, 1998, affirming Petitioner's conviction. Respondent's Ex. D. Pursuant to 28 U. S. C. § 2254(e)(1) and <u>Sumner v. Mata</u>, 449 U.S. 539, 546, 101 S. Ct. 764, 769, 66 L. Ed. 2d 722 (1981), these facts are presumed to be correct.

This was the first time McGuire alluded to a fifth man in the car.  The State brought this matter to the attention of the trial court, and the trial court declared a mistrial.

In March 1997, the appellant and Jones were tried again.[2]  McGuire testified that there were five men in the car.  The appellant, although not allowed to disclose that the first trial resulted in a mistrial, attempted to impeach McGuire using his prior inconsistent statements. The remainder of McGuire's testimony was consistent with that in earlier proceedings.

Exh. H, pg. 2, See Coleman v. State, 738 So. 2d 933 (Ala. Crim. App. 1998) (table).

At the conclusion of the consolidated trial, Coleman was convicted of two counts of murder on March 27, 1997, (Exh. A , pgs. 18, 20), and was sentenced to life imprisonment on each count. (Exh. A, pgs. 6, 14).  Coleman then filed a motion for a new trial. After a hearing, Coleman's motion was denied by the trial court judge on September 19, 1997 (Exh. A, pgs. 14, 16).  Coleman appealed the denial of his motion for a new trial to the Alabama Court of Criminal Appeals (Exh. B, pg. V).  In his appeal, he raised only one issue, namely, "Did the trial court erred (sic) in denying Mr. Coleman's motion for new trial based upon the use of perjured testimony?" (Id.).  The Alabama Court of Criminal Appeals affirmed Coleman's conviction and sentence in an unpublished memorandum opinion on May 8, 1998 (Exh. D).  The  certificate of

---

[2]The Court notes that Ronnie Randolph, one of the original defendants was acquitted after the Court granted a directed verdict based upon insufficient evidence during the first trial.

judgment was issued on May 27, 1998.  *See* <u>Coleman v. State</u>, 738 So. 2d 933 (Ala. Crim. App. 1998) (table).

On November 10, 1998, Coleman filed a timely Rule 32, Ala. R. Crim. Proc., post-conviction petition in Mobile County Circuit Court.  After an evidentiary hearing in the trial court, Coleman's petition was summarily denied on March 15, 2000 (Exh. E, Pg. 14). Coleman appealed the denial of his petition to the Alabama Court of Criminal Appeals (Exh. F).  In his appeal, Coleman alleged that his appellate counsel rendered ineffective assistance of counsel based on the following reasons:

A) Appellate counsel did not preserve the following ineffective assistance of trial counsel claims for review on direct appeal:

1) trial counsel did not make a double jeopardy objection before his second trial started, and that the prosecution had goaded the defense into moving for a mistrial in his first trial, 2) trial counsel did not timely object on the ground that the prosecution knowingly used the allegedly perjured testimony of Demetrius McGuire to convict him, 3) trial counsel did not request a jury instruction on perjury based on Demetrius Mcguire's allegedly perjured testimony, 4) trial counsel did not move to exclude the telephone records of one witness and the testimony of several witnesses on the ground that law enforcement officers obtained evidence only as a result of their misconduct and that of

4

an assistant district attorney in obtaining a statement and cooperation from Demetrius McGuire, 5) trial counsel did not argue in his motion for a judgment of acquittal at the close of the State's case that there was a fatal variance between the allegations contained in the murder indictments and the evidence presented at trial because he was convicted as an accomplice rather than as a principal but the indictments did not specifically allege that he was an accomplice, 6) trial counsel did not properly preserve and raise in his motion for a judgment of acquittal the contention that the State did not prove that he caused the victim's death, because the State allegedly did not corroborate Demetrius McGuire's testimony, 7) trial counsel did not properly preserve and raise in his motion for a judgment of acquittal the contention that the State did not prove that he aided and abetted the murders because the State allegedly did not corroborate Demetrius McGuire's testimony, 8) trial counsel did not argue in his motion for a judgment of acquittal at the end of the State's case and at the close of all of the evidence that a verdict of guilty would be contrary to the weight of the evidence, 9) trial counsel did not argue in his motion for a judgment of acquittal at the end of the State's case that the State did not prove that he intentionally aided and abetted the commission of the murders, 10) trial counsel did not request a jury instruction on the evidence lost by the State, 11) trial counsel did not object to the admission of a

photograph of, and testimony about, what was alleged to be a bullet hole in a co-defendant's vehicle, 12) trial counsel did not object to the prosecution's repeated references to the alleged bullet hole, 13) trial counsel did not request a jury instruction that stated that he could not be convicted as an accomplice unless the State first proved that he was guilty as a principal, 14) trial counsel did not request a jury instruction on Emmitt Bingham's status as an accomplice, 15) trial counsel did not request a jury instruction on Willie Fletcher's status as an accomplice, 16) trial counsel did not request a jury instruction on Jeffrey Simmons' status as an accomplice, 17) trial counsel did not timely and properly object on the ground that the trial court improperly limited his cross-examination of Demetrius McGuire by granting the State's motion in limine to prevent the defense from making any reference to the fact that the first trial ended in a mistrial, 18) trial counsel did not object to and did not move to exclude the testimony of Demetrius McGuire and Kasung McConnell on the ground that they committed perjury, 19) trial counsel did not move to dismiss the reckless murder charge and did not object to the trial court's instruction on reckless murder, 20) trial counsel did not object to the admission of allegedly irrelevant photographs, 21) trial counsel did not properly impeach the state's witness, Willie Fletcher, with his prior inconsistent statements and did not lay a proper foundation for the admission of his statements into

6

evidence, and 22)trial counsel did not request that the trial court instruct the jury to consider the co-defendants' cases and evidence separately and to arrive at a separate verdict for each codefendant. (Exh. F).

B) Coleman also argued in his petition that his appellate counsel was ineffective because 1) Appellate counsel did not argue on direct appeal that the trial court improperly denied Coleman's motion for judgment of acquittal because the State allegedly did not corroborate Demetrius McGuire's testimony, 2) Appellate counsel did not argue on direct appeal that the trial court improperly admitted hearsay testimony under the co-conspirator exception without requiring any proof that the person was a co-conspirator, and 3) Appellate counsel did not argue on direct appeal that the trial court improperly found that there was evidence that a conspiracy existed, improperly allowed the prosecution to introduce evidence about the conspiracy, and improperly instructed the jury on conspiracy.

On August 25, 2000, the Court of Criminal Appeals remanded the case to the trial court and directed the trial court to make specific findings of fact concerning Coleman's claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. (Exh. H, Exh. E, pgs. 28-30). Following the appeals court mandate, the trial court issued an order with specific findings of facts concerning Coleman's ineffective

assistance of counsel allegations.[3] (Exh. E, pgs. 31-32).   On November 27, 2000, the Court of Criminal Appeals reviewed the trial court's order following remand, and affirmed Coleman's convictions. (Ex. H).   The Alabama Supreme Court denied certiorari review on March 16, 2001.

On May 21, 2001, Coleman filed a second Rule 32 post-conviction petition in the Mobile County Circuit Court. (Exh. I, pg. 16).  On October 17, 2001, the trial court summarily denied and dismissed Coleman's second petition. (Id. at 17).  Coleman filed a notice of appeal on November 5, 2001.  In his appeal to the Alabama Court of Criminal Appeals, Coleman raised thirty-two issues.[4] Among the issues raised in Coleman's second Rule 32 petition were his assertions that the trial court did not have jurisdiction to render judgments and impose sentences in his case because the verdict forms were incorrect and because the jury instructions were misleading. (Exh. L).  The appeals court held that the claim was precluded as successive, that many of Coleman's ineffective

---

[3] The trial court judge that presided over Coleman's trial also presided over his Rule 32 hearing. In denying Coleman's Rule 32 petition, the trial court relied upon affidavits from Coleman's trial and appellate counsel.

[4] A list of Coleman's allegations is not necessary, as the petition was dismissed as procedurally barred by the statute of limitations contained in Rule 32.2 (c), Ala. R. Crim. P., and also barred as successive under Rule 32.2(b), Ala. R. Crim. P., which states that "the court shall not grant relief on a successive petition on the same or similar grounds on behalf of the same petitioner."

assistance of appellate counsel claims were the same as or similar to the claims that he raised in his previous petition, and that the trial court had addressed the merits of those claims in the previous rule 32 proceedings.   In addition, the appeals court, noting that Coleman raised some ineffective assistance of appellate counsel claims that he did not raise in his first petition, held that those claims were precluded as successive and time-barred because Coleman did not raise them in his first Rule 32 petition, and that he failed to show that the grounds for them were "not known or could not have been ascertained through reasonable diligence when the first petition was heard." (Exh. L) Accordingly, on April 19, 2002, the appeals court affirmed the trial court's dismissal of Coleman's second Rule 32 petition. (Id.).  Coleman's application for rehearing was overruled on May 3, 2002. (Exh. M).  Coleman then filed a writ of certiorari with the Alabama Supreme Court, which was denied on August 16, 2002. (Exh. N).

Coleman filed a petition seeking habeas corpus relief with this Court on September 30, 2002. (Doc. 1).  Coleman later filed two amendments which contained additional claims. (Docs. 4 & 5). Pursuant to an Order of the Court directing Coleman to re-file his petition on the correct Court form, he filed a new petition on October 31, 2002, which superseded his earlier petition and amendments. (Doc. 8).  In the new petition, Coleman raised twenty-

six issues.  The essence of Coleman's claims is that he was denied his Sixth Amendment right to effective assistance of counsel due to the actions, or lack thereof, of his trial counsel and his appellate counsel.

## DISCUSSION

Upon careful review of the record, the undersigned notes that Coleman's claims were raised in either his direct appeal or his Rule 32 petition, were considered by the state courts, and were denied on the merits. 28 U.S.C. § 2254, as amended, provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1) & (2).  Because Coleman filed his habeas petition after the enactment of AEDPA, subsection (d) applies to his petition.  This Act, as amended, presumes all determinations of factual issues made by a State court to be correct and places upon the petitioner the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

> "The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions. *See Williams v. Taylor*, 529 U.S. 362,

10

404-05, 120 S.Ct 1495, 1519, 146 L.Ed. 389 (2000).  A
state court decision is 'contrary to' clearly established
federal law if either (1) the state court applied a rule
that contradicts the governing law set forth by Supreme
Court case law, or (2) when faced with materially
indistinguishable facts, the state court arrived at a
result different from that reached in a Supreme Court
case.  *See Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir.
2000)."

A state court conducts an "unreasonable application"
of clearly established federal law if it identifies the
correct legal rule from Supreme Court case law but
unreasonably applies that rule to the facts of the
petitioner's case. *See id*.  An unreasonable application
may also occur if a state court unreasonably extends, or
unreasonably declines to extend, a legal principle from
Supreme Court case law to a new context. *See id*.
Notably, an "unreasonable application" is an "objectively
unreasonable" application. *See Williams*, 529 U.S. at 412,
120 S.Ct. At 1523.

Putnam v. Head, 268 F.3d 1223 (11th Cir. 2001).

In order for Coleman to prevail on any of his ineffective

assistance of counsel claims, he must establish by a preponderance

of the evidence that his trial and/or appellate counsel was

deficient and that he was actually prejudiced by the inadequate

performance.  In Strickland v. Washington, 466 U.S. 668 (1984),

the United States Supreme Court defined the showing a habeas

petitioner must make to prevail on an ineffective assistance of

counsel claim:

First, the defendant must show that counsel's
performance was deficient.  This requires showing that
counsel made errors so serious that counsel was not
functioning as the "counsel" guaranteed the defendant by
the Sixth Amendment.  Second, the defendant must show
that the deficient performance prejudiced the defense.
This requires showing that counsel's errors were so
serious as to deprive the defendant of a fair trial, a

11

> trial whose results are reliable.   Unless a defendant
> makes both showings, it cannot be said that the
> conviction ... resulted from a breakdown in the adversary
> process that renders the result unreliable.

*Id*. at 687.   In <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985), the United States Supreme Court extended <u>Strickland</u> to the appellate level, stating that "[a] first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have effective assistance of an attorney." *Id.* at 396.

Thus, petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," <u>Strickland</u>, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" <u>Van Poyck v. Florida Dep't of Corrections</u>, 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995)).

An ineffective assistance of counsel claim is examined under the "totality of the circumstances" standard. <u>House v. Balkcom</u>, 725 F.2d 608, 615 (11th Cir. 1984).   An attorney's performance is presumed to have been reasonable and must not be examined with the aid of judicial hindsight. <u>Messer v. Kemp</u>, 760 F.2d 1080, 1088 (11th Cir. 1985).   A federal court must apply a "heavy measure of deference to counsel's judgments." <u>Singleton v. Thigpen</u>, 847 F.2d

668, 670 (11th Cir. 1988)(quoting <u>Strickland</u>, 446 U.S. at 691).

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

<u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001) (quoting

<u>White v. Singletary</u>, 972 F.2d 1218, 1220-21 (11th Cir. 1992)).

Coleman's first habeas allegation is that his appellate counsel was ineffective for failing to raise during his direct appeal trial counsel's failure to object to the second trial on the basis of double jeopardy. Having reviewed the record in this matter, the undersigned agrees with the Alabama courts that Coleman's trial counsel was not deficient for failing to object to his second trial on the basis of double jeopardy. The basis for the mistrial was not linked in any way to misconduct on behalf of the government. The evidence is undisputed that upon learning of Demetrius McGuire's statements in the hall, the government immediately informed the defendants' attorneys and trial judge. After learning of McGuire's hallway statements, the following colloquy occurred:

> Mr. Haas [Coleman's attorney]: If Your Honor, please, the prosecution in this case has told us this morning that they have evidence from police officers that the State's witness, Demetrius McGuire, has made a factual statement that would be material to this case. It is contrary to what he said to the grand jury and what he said to this trial jury and they have, quite honestly, and I commend

13

them for revealing that to the defense and in view of
their honestly and in spite of the fact that we've spent
all of this time in the trial, I move for a mistrial,
realizing that it is not improper on their part.  On the
contrary, it is very proper.

The Court: And then there is no question that jeopardy
will not attach?

Mr. Haas: There's no question of jeopardy because they've
come forward with it.

The Court: Are you making the same motion?

Mr. Brutkiewicz [Jones' attorney]:  I make the same
motion, Judge.  We're going through it whether or not
there's manifestly necessity to proceed again and we have
been convinced that the prosecution had no knowledge of
this information prior.  In fact, when they first gained
knowledge of it, they immediately told us.  They
immediately advised the Court as their duty and they've
complied with their duty in every respect.

Exh. I, pgs 56-58.

It is obvious from this exchange that McGuire's statements,
which were overheard in the hallway, took both sides by surprise.
Moreover, it is clear that the government did not cause the
mistrial, or contribute to it in any way.  Thus, there is simply no
basis for an ineffective assistance of counsel claim.  In response
to Coleman's direct appeal, the appeals court, in affirming his
convictions and resulting sentences, held that:

[The appellant's former jeopardy argument] is without
merit.  The State was taken by surprise by McGuire's
inconsistent statements overheard in the hall, and, as
was its duty, took steps to notify the defense
immediately.  According to the Petitioner, the mistrial
was requested by Petitioner's counsel because he was not
adequately prepared to cross examine McGuire after
learning of inconsistent statements he made in the
courthouse corridor.  The State consented to the

14

mistrial.  The court ordered the mistrial in conformity with Alabama Code Section 12-16-233.  Petitioner does not allege and cannot show that the mistrial was occasioned by the government's misconduct.  <u>Smith v. State</u>, 1998 WL 678103, at p. 2 (Ala. Crim. App. 1998); <u>see</u> <u>also</u> <u>Spears v. State</u>, 647 So. 2d 15, 21-22 (Ala. Crim. App. 1994). Absent such a showing, double jeopardy is not a bar to the second trial.

(Exh. H, pg. 6).

Additionally, following a hearing on Coleman's Rule 32 petition, the trial judge stated that "trial counsel did not have a meritorious claim of double jeopardy," and therefore, "appellate counsel was not ineffective for allegedly failing to raise trial counsel's ineffectiveness[.]"(Id.).  The Alabama courts have considered this double jeopardy argument, and determined that it is meritless.  Petitioner has not pointed to any evidence of misconduct on the part of the government, let alone demonstrated that the courts' rulings were contrary to or involved an unreasonable application of clearly established federal law.  Accordingly, Coleman's first habeas claim fails to provide a basis for relief.

In his second habeas claim, Coleman asserts that trial counsel failed to timely object to the prosecution's use of the allegedly perjured testimony of McGuire.  Coleman presented this issue in his motion for a new trial, and in his direct appeal to the Alabama Court of Criminal Appeals.  In its memorandum opinion denying relief on such ground, the appeals court stated:

The sole issue on appeal is whether the trial court erred in denying the appellant's motion for a new trial. In <u>Ex parte Frazier</u>, the Alabama Supreme Court adopted the

15

following standard to be used in determining whether to
grant a new trial on the grounds of perjured testimony:

"In order to grant a motion for new trial alleging
perjured testimony, the trial court must be reasonably well
satisfied 1) that testimony given by a witness at trial was
false; 2) that there is a significant chance that had the
jury heard the truth, it would have reached a different
result; 3) that the evidence tending to prove the witness's
perjury has been discovered since the trial; and 4) that
the evidence could not have been discovered before or
during trial by the exercise of due diligence."

562 So. 2d 560, 569-70 (Ala. 1989).  To prevail, the
appellant must satisfy each of the four prongs of the
Frazier test.  The trial court's ruling on a motion for a
new trial based on perjured testimony will not be reversed
unless it is clearly erroneous.  Id. at 570.

The appellant has not satisfied his burden of showing
that McGuire's testimony was false.  Several witnesses
testified that there were at least four men in the car.
Furthermore, McGuire explained his inconsistent
statements.  According to McGuire, he originally stated
that there were only four men in the car because Burger,
the alleged fifth man, did not do anything, and McGuire
did not want him to get into trouble.  McGuire also
testified that the reason came he forward and confessed
was that he could not "please God" with the burden of this
knowledge on him. (R. 137)

"Although evidence of prior inconsistent
statements... might tend to lower a witness's credibility
before the jury, such evidence does not make such
witness's testimony automatically unbelievable." Miles v.
State, [Ms. CR-96-1294, Dec. 19, 1997]__ So. 2d __ (Ala.
Crim. App. 1997). At most, the jury was presented with a
credibility issue, and the credibility of witnesses is for
the jury to resolve.  Rutledge v. State, 651 So. 2d 1141
(Ala. Crim. App. 1994).

The appellant also has not satisfied the third and
fourth prongs of the Frazier test, which require showings
that the perjured testimony was discovered since the
second trial and could not have been discovered since
before or during trial through the exercise of due
diligence.  The appellant admits he cannot satisfy these
two prongs because in his brief he states that he was

16

aware of the allegedly perjured testimony during the second trial. (Appellant's Br. At 3). Furthermore, all of the evidence regarding McGuire's previous statements and prior testimony was admitted into evidence and was used extensively during the appellant's cross-examination of McGuire.

Because the appellant has not satisfied the requirements of <u>Frazier</u>, the trial court's denial of the motion for new trial was not clearly erroneous. Therefore, the judgment of the trial court is affirmed.

(Exh. D, pg. 2).

Upon review, it is clear that the Alabama courts considered this issue and determined that it lacked merit. Moreover, Coleman has failed to demonstrate that McGuire's testimony necessitated a new trial. As observed by the appeals court, all of the evidence regarding McGuire's prior statements and testimony was admitted into evidence at the second trial, and McGuire was extensively cross-examined by Coleman's counsel. In light of such, Coleman has failed to demonstrate that he was entitled to a new trial under <u>Frazier</u>, or that the courts' rulings were contrary to or involved an unreasonable application of clearly established federal law. Accordingly, Coleman's second habeas claim fails to provide a basis for relief.

In his third habeas claim, Coleman alleges that appellate counsel was ineffective because he did not raise the fact that trial counsel did not request a jury instruction on perjury in light of Demetrius McGuire's allegedly perjured testimony. As discussed with respect to Coleman's second habeas claim, the Court of Criminal

17

Appeals found no merit to Plaintiff's claim regarding the alleged perjured testimony of witness McGuire.  Furthermore, in ruling on Coleman's Rule 32 petition, the trial court noted that "appellate counsel was not ineffective for failing to raise the issue of perjury by witness McGuire on appeal.  The opinion of the Court of Criminal Appeals establishes that this issue was raised and rejected." (Exh. H at 7).  Moreover, in rejecting Coleman's direct appeal, the Court of Criminal Appeals specifically found that "The appellant has not satisfied his burden of showing that McGuire's testimony was false." (Id. at 3).  Accordingly, the record is clear that trial counsel raised the issue of perjury in the motion for a new trial, and appellate counsel addressed perjury in the direct appeal.  Given that the issue of perjury was raised before the state courts and rejected, Coleman has failed to establish that he was entitled to a jury instruction on perjury, and that he was somehow prejudiced by the fact that his trial counsel did not request a perjury instruction.  Therefore, his third claim must fail.

Coleman's fourth claim is that appellate counsel was ineffective for failing to raise on direct appeal the failure of trial counsel to exclude the telephone records of one witness, and the trial testimony of several other witnesses, on the ground that law enforcement officers obtained evidence only as a result of their misconduct and that of an assistant district attorney in obtaining a statement and cooperation from McGuire.

18

In specific reference to Coleman's fourth habeas claim, the trial court stated after the Rule 32 hearing that, "[t]he court finds that appellate counsel was not ineffective for failure to raise the issue of the admissibility of phone records. The records were relevant and probative and in any event the exclusion of records would not have affected the outcome of the proceedings." (Exh. H, pg. 7). A reading of the record confirms the trial court judge's ruling, and demonstrates that the telephone records were relevant to show the conspiracy between the defendants and McGuire. Moreover, with respect to Coleman's remaining contentions, the Court of Criminal Appeals found that although Coleman raised numerous claims, his petition only contained bare allegations that he did not adequately support with facts or evidence. Petitioner has not demonstrated that the courts' rulings were contrary to or involved an unreasonable application of clearly established federal law. Accordingly, Coleman's fourth habeas claim fails to provide a basis for relief.

With respect to Coleman's fifth habeas claim, he alleges that trial counsel did not argue in his motion for judgment of acquittal at the close of the State's case, that there was a fatal variance between the allegations contained in the murder indictments and the evidence presented. As grounds for his argument, Coleman alleges that at trial, he was convicted as an accomplice rather than as a principal, even though the indictments did not specifically allege

19

that he was an accomplice.  Coleman contends that appellate counsel was ineffective for failing to raise this issue.  In order to prevail on this point, Coleman must prove that a fatal variance existed, and had it not, the outcome would have been different.  The indictment under which Coleman was charged reads as follows:

> Eric Lamont Coleman whose name is to the Grand Jury otherwise unknown that as stated, did, with the intent to cause the death of another person, cause the death of Walter McCants, by shooting him with a gun, in violation of § 13A-6-2 of the Code of Alabama, against the peace and dignity of the State of Alabama.

> Count Two The Grand Jury of said County charge, that, before the finding of this indictment Eric Lamont Coleman whose name is to the Grand Jury otherwise unknown that as stated did, under circumstances manifesting extreme indifference to human life, recklessly engage in conduct which created a grave risk of death to other persons, and thereby cause the death of Walter McCants, to-wit: by shooting him with a gun, in violation of 13A-6-2, against the peace and dignity of the State of Alabama.

> Eric Lamont Coleman whose name is to the Grand Jury otherwise unknown than as stated, did, with the intent to cause the death of Antoine "Tony" Morrissette, cause the death of Antoine "Tony" Morrissette, by shooting him with a gun, in violation of § 13A-6-2 of the Code of Alabama, against the peace and dignity of the State of Alabama.

(Exh. A, pgs. 17, 19).

As an initial matter, it should be noted that Coleman has failed to proffer any evidence which reflects that he was convicted as an accomplice rather than as a principal.  Additionally, a review of the record reflects that the jury returned a verdict of guilty as to both indictments, that is, two counts of murder. (Exh. A, pgs. 18, 20).  Further, in rejecting Coleman's Rule 32 petition, the

trial court expressly found that "there was sufficient evidence to support [Coleman's] conviction". (Exh. E, pg. 32). Accordingly, Coleman has failed to establish a fatal variance between the indictments and the evidence presented.

With respect to Coleman's sixth habeas claim, he alleges that appellate counsel was ineffective for failing to raise on direct appeal that the trial court abused its discretion in denying Coleman's motion for directed verdict or motion to exclude the state's evidence. According to Coleman, his motions should have been granted because the state failed to corroborate Demetrius McGuire's testimony. In its Rule 32 Order following remand, the trial court determined that "appellate counsel was not ineffective for failing to raise the issue of corroboration of McGuire's testimony because the record is replete with corroborative evidence." (Exh. E, pg. 32). A review of the record supports the court's finding. For example, state witness Kasung McConnell testified that he recognized Coleman's voice and build when Coleman and his accomplices began firing, and that he observed Coleman firing a rifle. (R. 311-12). Accordingly, McGuire's testimony identifying Coleman as one of the shooters was in fact corroborated.

In Coleman's seventh claim, he alleges that appellate counsel was ineffective for failing to raise trial counsel's failure to raise in a motion for directed verdict or acquittal that the state failed to prove that he caused the death of the victims. In

rejecting Coleman's Rule 32 petition, the trial court expressly found that "there was sufficient evidence to support [Coleman's ] conviction", and that the alleged errors made by trial counsel would not have occasioned reversal on appeal. (Exh. E, pgs. 31-32). A review of the record supports the trial court's finding. Moreover, Coleman's conclusory assertions fail to establish that the trial court's rulings were contrary to or involved an unreasonable application of clearly established federal law, or an unreasonable determination of the facts. Accordingly, Coleman's habeas claim 7 fails to provide a basis for relief.

With respect to his eighth habeas claim, Coleman alleges that his appellate counsel was ineffective for not raising trial counsel's failure to argue in his motion for directed verdict of acquittal that the state failed to prove that Defendants aided and abetted each other, and never proved the crime of murder. As noted *supra*, in rejecting Coleman's Rule 32 petition, the trial court expressly found that "there was sufficient evidence to support [Coleman's ] conviction", and that the alleged errors made by trial counsel would not have occasioned reversal on appeal. (Exh. E, pgs. 31-32). Moreover, the record reflects that the state presented ample evidence that Coleman and his co-defendant Jones planned to harm Kasung for a botched drug transaction, and that they murdered Walter McCants and Antoine Morrissette in connection therewith. (Exh. A, pgs. 103-123). Coleman's conclusory assertions fail to

22

establish that the trial court's rulings were contrary to or involved an unreasonable application of clearly established federal law, or an unreasonable determination of the facts. Accordingly, Coleman's habeas claim 8 fails to provide a basis for relief.

As to Coleman's ninth habeas claim, he alleges error due to appellate counsel's failure to raise on direct appeal that accomplice Demetrius McGuire's testimony was not corroborated. Coleman raised this claim in his Rule 32 petition, and the trial court held that "appellant counsel's failure to raise the claim of insufficient evidence by an available procedure is not prejudicial error because the evidence was sufficient to support the conviction and there was ample corroboration of the accomplice's testimony." (Exh. E, pgs. 31-32). As noted *supra*, in addition to McGuire's testimony, Kasung McConnell provided corroborating testimony. Additionally, the record reflects that several witnesses testified to hearing Coleman and Jones talk of the shootings. In the face of such evidence, Coleman has failed to establish that McGuire's testimony was not corroborated.

With respect to Coleman's tenth habeas claim, he alleges that appellate counsel was ineffective for not raising trial counsel's failure to argue that a verdict of guilty would be contrary to the weight of the evidence. Coleman raised this claim in his Rule 32 petition, and the trial court found that the evidence was sufficient to support Coleman's conviction, and this finding was affirmed by

23

the Alabama Court of Appeals.  Coleman's conclusory allegations are not sufficient to establish that the state courts' rulings were contrary to or involved an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.  Accordingly, Coleman's habeas claim 10 fails to provide a basis for relief.

With respect to Coleman's eleventh habeas claim, he alleges that appellate counsel was ineffective for not raising trial counsel's failure to argue that the state failed to prove that he acted with the intent, promoted or assisted with the offense charged.  As noted with respect to Coleman's tenth habeas claim, the trial court found that the evidence was sufficient to support Coleman's conviction, and this finding was affirmed by the Alabama Court of Appeals. (Exh. E, pgs. 31-32; Exh. H, pg.7).  Aside from his bare assertion, Coleman has failed to proffer any evidence which demonstrates that the state courts' finding that there was ample evidence to support his conviction constituted an unreasonable determination of the facts.  The record reveals that there was ample evidence, including the testimony of McGuire, to support Coleman's conviction.  Accordingly Coleman's eleventh habeas claim  must fail.

As to Coleman's twelfth habeas claim, he alleges that appellate counsel was ineffective for failing to raise trial counsel's failure to request a jury instruction on evidence lost by the State.  As to this allegation, Coleman argues that the state failed to preserve

24

gunpowder that was found near a bullet hole in Coleman's car.  This issue was raised by Coleman in the Rule 32 proceedings, and the trial court found that "appellate counsel was not ineffective for allegedly failing to raise trial counsel's ineffectiveness because the errors alleged to have been made by trial counsel would not have occasioned reversal on appeal." (Exh. E, pg. 31).  The record reflects that a ballistic expert was called by the state, and he testified that he examined the bullet hole on the car, and observed a "smoky gunshot residue" around it. (R. 415-419).  According to the expert, he did not test the residue found around the bullet hole because he knew, based on his years of experience, that it was gunpowder; thus, testing was not necessary (R. 425).  The record also reflects that the  evidence was photographed and presented to the jury.  In view of the record evidence, Plaintiff has failed to demonstrate that he was entitled to a jury charge on destruction of evidence and has further failed to establish that he was prejudiced by the absence of such a charge.

As to Coleman's thirteenth habeas claim, he alleges that appellate counsel was ineffective for failing to raise trial counsel's deficiency in not objecting to the admission of a photograph of and testimony concerning the alleged bullet hole in the car.  As to this claim, the trial court, in rejecting Coleman's Rule 32 petition, found that "references to a bullet hole were not objectionable, the evidence was relevant and probative and references thereto were supported by

the record." (Exh. E, pg. 31).  The trial court further found that "trial counsel did not err to the prejudice of the defendant in failing to object to alleged irrelevant evidence of photos of the vehicle, evidence which the court finds was probative of the issues the jury was to resolve[.]" (Exh. H, pg. 7).  Coleman has presented no facts which demonstrate that the trial court's decision, which was adopted by the Court of Criminal Appeals, was contrary to or involved an unreasonable application of clearly established law.  In the absence of such a showing, Coleman's claim must fail.

With respect to Coleman's fourteenth habeas claim, he alleges that appellate counsel was ineffective for failing to raise the lack of trial counsel objections to the prosecution's repeated reference to the alleged bullet hole.  As with habeas claim thirteen, the state courts addressed this issue and Coleman has presented no facts which demonstrate that the state courts' decision on this issue was contrary to or involved an unreasonable application of clearly established law.  Therefore, fourteenth habeas claim also fails.

With respect to Coleman's fifteen habeas claim, he alleges that appellate counsel was ineffective for failing to raise on appeal that the trial court improperly admitted the testimony of Laura Alexander.  The record reflects that Laura Alexander, a neighbor of Coleman's, testified that she saw Coleman, McGuire and Jones several hours before the murders, and that outside the presence of Coleman and Jones,  McGuire told her of their plans to get revenge on the people who had

robbed them earlier. (R. 530-536).  The trial court admitted Alexander's testimony, over objections from Coleman's counsel, on the basis that it was a statement of a co-conspirator and not hearsay. (R. 365-391).  Coleman raised this issue in his Rule 32 petition, and the trial court held that "appellate counsel was not ineffective in failing to raise the issue of hearsay regarding Alexander's testimony about McGuire's statements in furtherance of the conspiracy". (Exh. E, pg. 32).  Under Rule 801(d)(2)(E) of the Alabama Rules of Evidence, a statement is not hearsay against a party if it is a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Despite Coleman's assertions to the contrary, Alexander's testimony regarding statements by co-conspirator McGuire did not constitute hearsay, and was properly imputed to his co-conspirators. Coleman has presented no facts which demonstrate that the state courts' decision on this issue was contrary to or involved an unreasonable application of clearly established law.  Therefore, fifteenth habeas claim must fail.

In Coleman's sixteenth claim for habeas relief, he alleges that his appellate counsel was ineffective for failing to raise on direct appeal that trial counsel did not request a jury instruction that stated that he could not be convicted as an accomplice unless the State first proved that he was guilty as a principal.  Coleman raised this issue with the state courts, and in its order affirming the trial court's dismissal of Coleman's first Rule 32 petition, the Court of

Appeals noted that the trial court found that "appellate counsel was not ineffective for allegedly failing to raise trial counsel's ineffectiveness because errors alleged to have been made by trial counsel would not have occasioned reversal on appeal". (Exh. E, pg. 31). Moreover, it should be noted that Coleman has failed to proffer any evidence which reflects that he was convicted as an accomplice rather than as a principal. The jury found Coleman guilty of two counts of murder, and the trial court expressly found that "there was sufficient evidence to support [Coleman's] conviction. Accordingly, Coleman has failed to establish he was entitled to the suggested instruction, or that it would have affected the outcome of his case. He further failed to establish that the trial court's rulings were contrary to or involved an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.

In his habeas claims seventeen through nineteen, Coleman alleges that appellate counsel was ineffective for failing to raise on direct appeal trial counsel's failure to request a jury instruction on Emmitt Bingham, Willie Fletcher, and Jeffrey Simmons' status as accomplices. Coleman raised this issue in his Rule 32 petition, and the trial court addressed it. In its findings, the trial court held that "it was no[sic] error to fail to raise the court's failure to name accomplices by law." (Exh. E, pg. 32). Contrary to Coleman's assertion, a review of the record fails to reveal any evidence that

establishes that these individuals took part in the murders at issue. While all three provided testimony regarding circumstances surrounding the murders, the record is devoid of any evidence which establishes their involvement in the murders.  Additionally, Coleman has presented no facts which demonstrate that the state courts' decision on this issue was contrary to or involved an unreasonable application of clearly established law, or an unreasonable determination of the facts.  Accordingly, Coleman's claims lack merit.

As to Coleman's twentieth habeas claim, he alleges that his appellate counsel was ineffective for failing to raise on direct appeal that trial counsel did not timely and properly object to the fact that the trial court limited trial counsel's cross-examination of Demetrius McGuire by preventing him from making any reference to the fact that the first trial ended in a mistrial.  Following the Rule 32 hearing, the trial court entered an order holding that "appellate counsel was not ineffective for failing to raise the granting of the State's motion in limine precluding reference to the earlier mistrial." (Exh. E, pg. 32).  "The fact of the mistrial is irrelevant and prejudicial. the defendant had an opportunity for full and effective cross examination of McGuire, the witness whose conduct had occasioned the previous mistrial." (Id.).  Coleman has failed to demonstrate that the trial court's decision was contrary to or involved an unreasonable application of clearly established law.  As correctly determined by the trial court, the fact that the first trial

29

ended in a mistrial simply had no bearing on the subsequent case and was therefore properly precluded.

With respect to Coleman's twenty-first habeas claim, he alleges that appellate counsel was ineffective for failing to raise on direct appeal trial counsel's failure to object and move to exclude the testimony of McGuire and Kasung McConnell on the ground that they committed perjury.  In its order denying Coleman's direct appeal, the Court of Appeals found that Coleman failed to meet his burden of proving perjured testimony by McGuire. (Exh. D).  Moreover, in its decision affirming the trial court's denial of Coleman's first Rule 32 petition, the Court of Appeals noted that Coleman had argued before the trial court that appellate counsel was ineffective for failing to raise trial's counsel's failure to object and move to exclude the testimony of Demetrius McGuire and Kasung McConnell on the ground that they committed perjury, and that the trial court found that trial counsel was not ineffective because the errors alleged by Coleman would not have occasioned reversal on appeal. (Exh. H).  Coleman has failed to demonstrate that the state courts' findings were contrary to or involved an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.  Thus, his claim must fail.

Coleman's twenty-second allegation of ineffective assistance of appellate counsel is that trial counsel failed to move for a dismissal of the reckless murder charge and failed to object to the trial

court's instruction of such charge.  As to the jury instructions charged at trial, the trial court, in rejecting Coleman's Rule 32 petition, held that "trial counsel did not err in failing to object to the court's charge to the jury which was in its totality a correct statement of the law[.]" (Exh. E, pg. 31).  Coleman has not shown that the charge to the jury was erroneous or that he was prejudiced as a result of it.  Additionally a review of the record in this matter reflects that evidence was presented to support the reckless murder charge contained in the indictments.  Thus, Coleman's claim is without merit.

As to Coleman's twenty-third claim of ineffective assistance of appellate counsel, he alleges appellate counsel failed to raise on direct appeal that trial counsel did not object to the admission of allegedly irrelevant photographs.  As to this allegation, the trial court determined that "trial counsel did not err to the prejudice of the defendant in failing to object to alleged irrelevant evidence of photos on the vehicle, evidence which the court finds was probative of the issues the jury was to resolve[.]" (Exh. E, pg. 31).  The record reflects that the photograph showing the indentation in the car was identified by the police officer who took the photograph, and that ballistics expert Richard Dale Carter testified that the indentation shown on the photograph was a bullet hole.  Coleman has not established that there existed a legitimate legal basis for barring the photographs.  Thus, his trial counsel was not ineffective for

failing to object to the admission of the photographs, and his appellate counsel was likewise not ineffective for not raising the issue on direct appeal.

With respect to Coleman's twenty-fourth claim for habeas relief, he alleges that appellate counsel was ineffective for failing to raise on direct appeal that trial counsel did not properly impeach State witness Willie Fletcher with his prior inconsistent statements and did not lay a proper foundation for the admission of his statements into evidence. According to Plaintiff, Fletcher gave a statement to police that was different than his testimony at trial. As noted *supra*, the trial court, in denying Coleman's Rule 32 petition, found that appellate counsel was not ineffective for allegedly failing to raise trial counsel's ineffectiveness because the alleged errors by trial counsel would not have occasioned reversal on appeal. Based upon a review of the record, the undersigned finds that Coleman has wholly failed to proffer any facts that indicated that Fletcher's alleged inconsistent statements were material such that they would have affected the outcome of this case. He has also failed to establish that the trial court's rulings were contrary to or involved an unreasonable application of clearly established federal law, or an unreasonable determination of the facts. In the absence of such evidence, Coleman's bare allegations are not sufficient to establish ineffective assistance of counsel.

In his twenty-fifth claim, Coleman alleges that appellate counsel

failed to raise on direct appeal the issue of whether the trial court abused its discretion by instructing or charging the jury on conspiracy. In his twenty-sixth claim, Coleman asserts that trial counsel failed to raise the issue of whether the trial court abused its discretion by instructing or charging the jury on conspiracy. As to these two claims, the record reflects that the charge as given was proper. In an affidavit submitted in conjunction with the Rule 32 proceedings, Coleman's trial counsel explained that he would have objected to the charge on complicity if, "I felt that it was not an accurate statement of the law." (Exh. H, pg. 5). Moreover, in rejecting Coleman's Rule 32 petition, the trial court held that "trial counsel did not err in failing to object to the court's charge to the jury which was in its totality a correct statement of the law[.]" (Exh. H, pg. 6). Aside from his bare assertions, Coleman has offered nothing to demonstrate that the charge, as given, was an incorrect statement of the law, or that his trial counsel's failure to object to the conspiracy charge affected the outcome of the case. Additionally, Coleman has failed to establish that the trial court's rulings were contrary to or involved an unreasonable application of clearly established federal law, or an unreasonable determination of the facts. In the absence of such a showing, Coleman's twenty-fifth and twenty-sixth claims must fail as well.

In sum, with respect to Coleman's habeas claims, which were considered by the trial court and the Alabama Court of Criminal

Appeals and were denied on the merits, the Court finds that Coleman's claims must be denied under § 2254(d).  Upon review, the undersigned finds that the state courts' decisions were not "contrary to" the governing legal authority.  The state courts, which correctly identified <u>Strickland</u> as the controlling legal authority on claims of ineffective assistance of counsel, did not reach an opposite conclusion from the United States Supreme Court on a question of law. Additionally, Coleman has not cited to any decision of the United States Supreme Court that, faced with materially indinguishable facts, reached a decision different from the state courts' in this case. Therefore, the state courts' decisions were not "contrary to" governing United States Supreme Court precedent.

Furthermore, the undersigned is unable to say that the state courts' application of <u>Strickland's</u> attorney performance standard was objectively unreasonable.  As noted in <u>Bell v. Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 152 L. Ed. 2d 914 (2002), "an unreasonable application is different from an incorrect one. <u>Bell</u>, 535 U.S. at 694.  The Court may not grant the writ simply because it determines that the state court erroneously or incorrectly applied the correct governing law. Relief is only warranted if the application was unreasonable. <u>Id</u>. Under this demanding standard, the state courts' determination that, with regard to each issue, Coleman did not show either deficient performance by his counsel or prejudice was reasonable.

Finally, Coleman has failed to establish entitlement to relief

under § 2254(d)(2) by showing that the state courts' decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court must presume as correct the determinations of all factual issues made by the state court. 28 U.S.C. § 2254(e).  Coleman has wholly failed to rebut the presumption of correctness by clear and convincing evidence. <u>Foster v. Johnson</u>, 293 F.3d 766, 776-77 (5th Cir. 2002)("To establish that habeas relief is warranted on the § 2254(d)(2) ground that the state court's decision was based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings, a petitioner must rebut by clear and convincing evidence the § 2254(e)(1) presumption that a state court's factual findings are correct.")

CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge is of the opinion that petitioner's rights were not violated and that his request for habeas corpus relief should be denied.  It is so recommended.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this **21st** day of **July 2006.**

                               **/S/ SONJA F. BIVINS**

                              **UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(c); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/S/  **SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**